**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 26-258** |
| **CESAR CEDANO** | : | |

# GOVERNMENT'S SENTENCING MEMORANDUM

After entering the United States illegally, defendant Cesar Cedano executed a scheme to steal checks from local businesses – including a pediatric cancer foundation – and after altering those checks, he used the checks to defraud banks. When the South Whitehall Township Police executed a search warrant on the defendant's residence, police officers located a counterfeit Social Security card in the name of another individual and over $600,000 in stolen checks from area businesses. The defendant stands before this Court to be sentenced.

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).[1]

At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the

---

[1] Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above.

§ 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The Government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors.

## I. BACKGROUND

On July 30, 2025, the defendant pled guilty to Counts One through Four of an information charging him with conspiracy, in violation of 18 U.S.C. § 371 (Count One); bank fraud, in violation of 18 U.S.C. § 1344 (Counts Two and Three); and identity fraud, in violation of 18 U.S.C. § 1028(a)(6) (Count Four), and not to contest forfeiture as set forth in the notice of forfeiture charging criminal forfeiture under 18 U.S.C. § 982(a)(2)(A), all arising from the defendant's scheme to defraud Citibank and Truist, the two banks into which the defendant deposited stolen business checks and his possession of a counterfeit Social Security card.

## II. SENTENCING CALCULATION

### A. Statutory Maximum Sentence.

A. 18 U.S.C. § 371 (Conspiracy): 5 years' imprisonment; three years' supervised

release; a $250,000 fine; and a $100 special assessment, per count of conviction.

B. 18 U.S.C. § 1344 (Bank Fraud): 30 years' imprisonment; five years' supervised release; a $1,000,000 fine; and a $100 special assessment.

C. 18 U.S.C. 1028(a)(6) (Identity Fraud): 1 year of imprisonment; 1 year of supervised release; a $100,000 fine; and a $25 special assessment.

**B. Sentencing Guidelines Calculation.**

The Probation Office correctly calculated the defendant's advisory guideline range as follows: Based upon a total offense level of 16 and a criminal history category of I, the guideline imprisonment range is 21-27 months.

## III. ANALYSIS

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public

from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

**A. Consideration of the 3553(a) Factors Regarding Imprisonment.**

The defendant engaged in serious offenses. He executed an intentional months-long scheme, involving pre-planning, to first steal from businesses, and then to steal from banks. He pre-selected businesses in remote locations that would not have security cameras. He recruited others to assist him in his crimes. He used his knowledge about computers and financial instruments to alter checks to accomplish his fraud. He continued to perpetrate this scheme until he amassed the small fortune of approximately $600,000 worth of stolen checks in his apartment. He was caught by the South Whitehall Police because he took credit cards he stole from the Lehigh Valley Pediatric Cancer Foundation and used them at Walmart, Dick's, and Best Buy. At the time of his arrest, his criminal activity was increasing in scope, not diminishing. When police entered his apartment to execute a search warrant, they noticed a computer screen open showing Social Security numbers, along with checkbooks of others, forty-eight credit card and debit cards of others, as well as antifreeze and brake fluid – chemicals commonly used to alter checks. Lastly, he did all of this while he was present in the United States illegally.



*Cedano and unknown male at Walmart on April 29, 2025*



*Stolen checks recovered from Cedano's residence*

The defendant is a 25-year-old male who is currently incarcerated in Lehigh County Jail. He was recently sentenced on state charges relating to this case, which resulted in a prison sentence of approximately six and half months. The defendant previously lived in Allentown, Pennsylvania before his arrest. He is a Dominican national who illegally entered the United States on November 19, 2022, and requested asylum. He spent five days in detention in El Paso and was paroled into the United States, where he travelled to the Bronx, and then to Allentown. He has since filed an asylum claim. The defendant was married in 2023 to a U.S. citizen.

The defendant previously attended college at the Universidad Central del Este in the Dominican Republic and is a software engineer by training. The defendant reported that he worked in cell phone repairs in the Dominican Republic. Although the defendant reports no steady income, he and his wife were able to afford $1,780 for rent, a 2018 Honda CRV, utilities,

cellphone bills, and other bills for food, clothing and gas. After the conclusion of this case, the defendant will be removed from the United States back to the Dominican Republic.

Although the defendant was sentenced for his state conviction of access device fraud, and the government agrees that the Court can and should consider this in imposing a just sentence, that conviction was for a different crime – using a stolen credit card – and should not vitiate the need for federal culpability for defrauding banks. Additionally, although the defendant will be removed at the conclusion of his sentence, this fact should also not nullify the need for a sentence of imprisonment on these charges. Surely the compounding of criminal activity should not result in a lesser sentence, than had the defendant committed the instant offenses while lawfully in the United States.

Deterrence is a factor driving the sentence in this case. The recommended sentence of 14 months would address this concern. With settled determination, the defendant ignored the law at every turn, and the impact on other people, as he continued to commit his crimes. The defendant's callousness could not be more clearly demonstrated than his stealing from a pediatric cancer foundation. The defendant did not only steal from that foundation, but he went on to use those stolen credit cards to buy items from Dicks, Walmart and Best Buy. It is important that the Court sentence this defendant to a term of imprisonment that adequately deters others who commit similar offenses. The recommended sentence of 14 months, which is only 7 months lower than the applicable sentencing guideline range, is sufficient to the defendant from engaging in such behavior in the future. A 14-month sentence is a just and reasonable sentence that accomplishes the goals of sentencing, while taking into account the disparity between actual and intended loss in this case. Although the defendant stole $619,383.18 worth of checks – a driving factor in his guideline calculation – the victims only incurred $7,334.13 of actual loss.

Additionally, although not dispositive, the fact that the defendant served six months of state incarceration for related criminal conduct is a factor. Lastly, a 14-month sentence will balance general deterrence while adequately protecting the community because it will be followed the removal of the defendant from the United States.

There is not a need in this case to adjust the sentence in order “to provide the defendant with needed educational or vocational training. § 3553(a)(2)(D). The defendant’s status as an illegal alien will likely preclude programming in the Bureau of Prisons in light of his imminent removal. Furthermore, the defendant has achieved significant education and training in his home country of the Dominican Republic.

Pursuant to 18 U.S.C. § 3663A, restitution in the total amount of $7,334.13 should be ordered in this case. Restitution is due to the following victims:

1) $6,430.93 to Citibank
2) $903.20 to Fulton Bank

In sum, the Government respectfully requests the court to consider all of aforementioned facts, and any set forth in the sealed supplement in imposing a sentence of 14 months’ imprisonment.

## IV. CONCLUSION

For these reasons and subject to any that may be presented at the defendant's sentencing hearing and in the sealed supplement, the Government respectfully requests the court to consider all of aforementioned facts in imposing a just sentence in this case.

Respectfully submitted,

DAVID METCALF
United States Attorney

*/s Robert W. Schopf*
ROBERT W. SCHOPF
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that this Sentencing Memorandum has been served on the Filing User identified below through the Electronic Case Filing (ECF) system:

*Nancy MacEoin, Esq.*
*Counsel for Cesar Cedano*

*/s Robert W. Schopf*
ROBERT W. SCHOPF
Assistant United States Attorney

DATED: November 16, 2026.